the appointment under the Criminal Justice Act in this case, and you may proceed. Thank you, Your Honor. May it please the Court. My name is James Nelson, and I represent the appellant in this matter, Jae Bernard. This case comes before the Court following a guilty plea, a conditional guilty plea, by Mr. Bernard to the provisions of 18 U.S.C. 922 G-9. Prior to the guilty plea, Mr. Bernard filed a motion to dismiss based on the constitutionality of 922 G-9 pursuant to United States v. Bruin or excuse me, Bruin v. New York State Rifle and Pistol, New York State Rifle and Pistol Association v. Bruin. The District Court denied the motion. The government's response and resistance to the motion was to provide the Court with surety laws as a basis for the Bruin standard of history and tradition of laws that are consistent with prohibitions under the Second Amendment. And at District Court, the argument is and was and still is that the permanent lifetime firearm ban for misdemeanor conviction is what makes it unconstitutional. This matter was originally set for no argument, and following the Rahimi decision Are you familiar with the procedural history? Right. Do you want to just Well, I'm assuming that, I'm assuming what you guys want to talk about is Rahimi. Well, we want to talk about the whole legal issue of, that you've raised. Rahimi would be part of it. Okay. It's not strictly Rahimi because there, we have Heller and we have Bruin and we have some Court of Appeals decisions that bear on the matters. Right. Feel free to proceed however you wish. Sure. It's not strictly a Rahimi argument. Sure. Well, that was my assumption that you wanted to discuss Rahimi since there was additional briefing after Rahimi. Yes. Well, it's an important case. As it relates to Bruin, Your Honor, there's essentially two provisions that Bruin requires. One is whether or not the conduct is protected by the Second Amendment. And the second issue is whether or not there's a history and tradition of prohibitions that are consistent with the prohibition, which would be under 18 U.S.C. 922g9. Clearly, Mr. Bernard falls into the category of persons whose conduct is protected by the Second Amendment. He was a citizen of the United States. The firearm that, the firearms that he possessed were common use firearms. And he falls under, and the Court did conclude that he falls under the people as defined under the Second Amendment. So the question really becomes whether or not the history and tradition of the United States establishes that a permanent lifetime prohibition is constitutional. And after our argument, of course, Rahimi was decided. And Rahimi concluded that based upon two essential issues, 18 U.S.C. 922g8 was constitutional. And those two issues were, one, that there's a credible finding of a threat to another person, and two, that the dispossession or banishment of a firearm is not permanent. So after Rahimi, it raises the question about the permanency of the dispossession or banishment of a firearm as it relates to 922g9. The government, in response to the Court's request for additional briefing, submitted a, in part of their brief, they referenced 921a33c as evidence that this is not a permanent lifetime prohibition. The problem with the government's position is that the provisions of 18 U.S.C. 922a33c do not disestablish that it's a permanent lifetime provision. All that provision does is makes it a permanent lifetime provision unless and until the citizen can convince the government that his rights should be reinstated. It effectively switches the burden that Bruin requires and Rahimi requires for the government to establish that he's a danger to the community, to the defendant to establish that he is not a danger to the community. So our position is that under 922a33, excuse me, that does not disestablish a permanent lifetime prohibition. Additionally, that issue wasn't raised in the district court so the district court hasn't heard or addressed that issue. We raised the issue of permanency. They did not respond and provide, as is their burden, that as a basis for why this is not a permanent prohibition. Why do you think a permanent prohibition would be unconstitutional? I understand Rahimi did not involve one, but Rahimi didn't say what it would do with a permanent ban. It just said in that case it was not permanent and it was permissible. But we have other prohibitions like the felony prohibition that are permanent. Why would this one be impermissible, do you think? I do not think it's permissible and the reason I don't think it's permissible is Rahimi and Bruin, there's nothing in the history of the United States. Rahimi relied upon surety laws and relied upon fray or fray laws that one dispossessed the firearm that was used in the fray law but not permanently. It forfeited the firearm that was used in the offense. We have currently laws that do exactly that. When someone's convicted of an offense, the firearms or weapons or whatever that were used during the course of that offense are forfeited for their involvement in the offense. The surety laws do not permanently dispossess and, in fact, didn't dispossess anyone from possessing a firearm. All they required was that someone post a bond to possess the firearm and they could continue to possess the firearm. So the fray laws and the surety laws which were cited in Rahimi don't establish a historical tradition of disarmament of someone permanently. So if you look at the history of firearm rights in America, there is no historical tradition to permanently disarm someone of firearms. The other issue with the felon, legal issue that I see as it relates to felon in possession is that the government has effectively changed the definition of what a felony is and they've expanded the group to whom it applies. Originally, at the time of the passage of the Constitution and the Second Amendment, a felony was an offense for which forfeiture of property or death could be imposed. Now it is an offense that exceeds one year. So similar to the circuit court's notation and range, you can't simply define something and then allow the government, empower the government to change the definition of it, expand the group or class and claim that that's constitutional. And that's exactly what's happening with the felon in possession laws. The government has redefined what felon is. This law didn't go into effect until roughly 30 years ago, which in the timeline of the country is relatively recent. So even though maybe there were laws that existed at the time of the passage of the Second Amendment related to domestic abuse or surety laws that said you could not possess one unless you posted a surety, there's never been a law that establishes a permanent dispossession of a firearm as constitutional. So that's under Rahimi. That is why this is unconstitutional. And additionally, they're doing so without a credibility, credible threat finding that's consistent with the length of the prohibition. So if you assume for purposes of argument that the conviction in and of itself is evidence or is sufficient to establish that the prohibition should be imposed, the length of the prohibition isn't consistent with the findings. So you've got people that are committing offenses from low-level misdemeanor offenses that maybe a bruise or something was caused all the way up to murder. And they're all subject to a lifetime prohibition. And the requirement under 921A33 is that anyone who wants to get their firearm rights back, the burden shifts to them to convince the government to give them back. It's a preexisting right that the government should have to prove that they can permanently extinguish. And those people in a dating relationship, it doesn't apply to people in a marital relationship, which is another issue that potentially raises an equal protection problem. Because, again, this wasn't raised at the district court level, so it hasn't been addressed. But the fact that there's a distinction between the marital status of the people that can get their rights back and the marital status of those that are permanently prohibited causes an equal So it would be subject to strict scrutiny. So with that, Your Honor, I've got four minutes of my six minutes of rebuttal time left. I'm going to allow the government to make their argument and I'll be back for rebuttal. But I thank you for your time. Very well. Thank you for your argument. Mr. Tremel, I'll hear from you. May it please the Court, Counsel. Mark Tremel, Assistant United States Attorney, Cedar Rapids, Iowa. First of all, I wanted to clarify something. In our supplemental brief at the bottom of page 8, we referenced the provisions on expungements, pardons, or restorations of rights that has been in effect for a while. And I was looking at this late last night. The dating violence was actually added in 2022 and this defendant committed his offense in 2021. So we still think the argument regarding expungements, pardons, and restorations of rights applies to the facial argument, but the dating, there's a timing issue because that wasn't passed until 22 and that wasn't the statute that this defendant committed his offense under. Regarding the historical tradition, a couple of points on that. One is under Rahimi, the surety and the going armed laws, the significance of that is that they mitigated, demonstrated threats of physical violence. That was the purpose of those laws and the Court found that that justified 922G8. In Jackson, this Court, for the 922G1, the looked at the historical tradition and talked about how Congress or legislature could make categorical determinations. It doesn't have to be an individual determination, but they can make categorical determinations that is consistent with the tradition both in England and in the states in the U.S. at the time of the founding. Now the defense argues that 922G9 is different. It does have different mechanisms, but it is relevantly similar, using the words of Rahimi, because it's consistent with the principles that underlie the regulatory condition. Two things about relevantly similar. First is why, second is how. On the why side of it, like 922G8, 922G9 mitigates a demonstrated threat of physical violence. The Supreme Court recognized this in the Hayes case and that was cited in the Castleman case. It was also cited in the Scoyan case from the Seventh Circuit that someone who commits a domestic abuse and is convicted of that does demonstrate a threat of physical violence. The how portion of the relevantly similar analysis, this is different from Heller or Bruin. Both 922G8 and 922G9 are because it's a narrower group. It's not a large group of people who are dispossessed in firearms. In 922G8, it's people who have the protective order. In 922G9, it's persons who are convicted of misdemeanor crime of domestic violence. Now the defense argues that there's a safeguard. He says there's a safeguard in 922G8 that is not in 922G9, and that's that it is temporary. And there is a different safeguard in 922G9. The reason we have or one reason why the safeguard being temporary is important is that in 922G8, there is no conviction. It is a finding by a judge of preponderance of the evidence that a person represents a credible threat. If we were to have just a finding by a judge by preponderance resulting in a lifetime prohibition, that was the concern the Supreme Court said. The fact that it was temporary was a safeguard. Here there's a different safeguard. The safeguard is that the defendant has been convicted beyond a reasonable doubt. He's pled or been convicted of an offense where the elements included the use, attempted use of physical force or the threatened use of a deadly weapon. And also, while it doesn't have to be listed as an element, the person has to be in a domestic relationship. So the fact that you have to have a conviction of that is a safeguard that G8 doesn't have. So it's a different mechanism, but it's still a safeguard. If having a lifetime prohibition were facially unconstitutional, then that would cause a problem for 922G1. It would cause a problem under Jackson. G9 is like Jackson in this respect in that Congress can make a categorical determination under the history and tradition. And they have made categorical determinations that felons should not possess firearms. And they've made a categorical determination that domestic abuse misdemeanors should not have firearms either. Now one thing that Jackson noted in a footnote in response to one of the defense arguments was that approximately 18.2 percent of people, felonies in state courts would be considered violent. I'm not quoting that exactly. And a smaller percentage in federal courts. Now that's not really the, you know, that's not the analysis here. The analysis is history and tradition. But if we're talking about over breadth, here it's much more than 18 percent. Here for defendants who are convicted of misdemeanor crimes of domestic violence, they have pled guilty to something that shows that they present a credible threat. And Congress can act on that and say categorically we're going to use our discretion and we're going to say you cannot possess firearms. As this court pointed out in Jackson, the history and tradition standard does give Congress more flexibility, more discretion. And under Jackson and consistent with Rahimi, 922 G9 is constitutional, does not violate the Second Amendment. I'd be happy to answer any questions. So are you relying on the surety laws and the other laws discussed in Rahimi or are you relying more on the tradition as to felons? Sure. Your Honor, I think the surety laws and the going arm laws, we're relying on them to the extent that they show that it is consistent with history to take action to mitigate demonstrated threats of physical violence by prohibiting possession of firearms. Obviously, it's a different mechanism. But we're looking at what this Court said in Jackson, which was there are two schools of thought. There's the school of thought that you are not law-abiding. There's the school of thought that you have to show dangerousness. Under either school of thought, Congress can make a categorical determination. And the same would apply here. Congress can make a determination using the same reasoning that the Court outlined in Jackson. Here, obviously, there's more of a direct connection to danger than with felonies because not every felony necessarily is a dangerous felony. But I think the reasoning still holds that Congress could still make that categorical determination. But we understand that it's not an exact match to surety and to going armed. If there are no other questions, ask the Court to affirm the district card. Thank you. We'll hear a rebuttal. I think the question, Your Honor, becomes based on the standard set in Rahimi, how long is one a credible threat to another person? And again, 922G doesn't have any guardrails. There's a distinction between, there's always been a judicial distinction between felonies and misdemeanors. And it's one thing to say that all felons categorically are prohibited, even if you've diminished the definition of a felony from what it originally was down to an offense that is in excess of one year. It's another to say that all persons who are misdemeanors who committed a specific type of assaultive offense should be permanently banished, especially when there's no corresponding conclusion or requirement that the government establishing an ongoing credible threat. In Rahimi, they relied heavily on the fact that the Court concluded that there was a credible threat. A credible threat presumptively means something that's immediate and apparent and could happen at any time, not a lifelong threat. So the issue becomes how long does one present a credible threat? What statute do you think would be constitutional? What's that? What could Congress do constitutionally to dispossess a person like your client who, or anybody who assaults a domestic partner? Sure. Well, I wouldn't consider myself smart enough to write the laws, but I would suggest that maybe. No, I'm asking you the legal question of what would be constitutionally permissible. I think it would be constitutionally permissible if the 922G9 had either a sunset date, meaning that you were dispossessed for a certain amount of time. How long would be constitutional? Five, ten, I don't know. As long as the government. How would the Court figure that out? Well, you could put a provision in there that as long as the government can prove that this person is an ongoing credible threat to another person, then it can be extended. But unless until they can prove that he or she is an ongoing threat to another person, a credible threat to another person, then it has to sunset and terminate. And that's not what this provision says. It's a lifetime permanent ban. And then it switches the burden to the defendant to disprove that he's a threat. So it's... How many years do you think would be constitutional? Less than 20. That's the amount of time from my client's conviction until he was indicted. Some of your people are, some clients are older. Sure. But I think that the statutory machinations could be constructed such that the burden is actually placed on the government as required by Rahimi and Bruin to establish a credible threat that is consistent with the timeline. So it would decide if the person is still dangerous. The Court. They could file a petition to extend the provisions of 922 beyond the time So let's just say this. If 922G said if you're convicted of this type of offense, you cannot possess a firearm for five years, and the government at five years can make a motion to the Court to extend that timeline if they can establish that you're an ongoing credible threat. I think that would be constitutional. But just to say that this one instance of whatever the offense might be, you're permanently dispossessed from Second Amendment rights that are preexisting isn't constitutional because it doesn't allow or require the government to establish an ongoing credible threat. And that's the issue that I believe Rahimi says has to be proven, and Bruin puts the burden on the government to do it. So that's, we would ask the Court to overturn the district court's conclusion that 18 U.S.C. 922G is constitutional based upon the permanency of the prohibition. Very well. Thank you for your argument.